Jennifer Erickson Bach on behalf of the appellant, Axos Clearing, formerly known as Core Clearing. Throughout the appeal today, I'll be referring to the appellant simply as the appellant, to reduce confusion with names. The central issue in this appeal is whether, under the law of New Jersey, a fidelity policy that provides coverage for loss directly resulting from the dishonest acts of any employee cover settlements for third parties arising from employee dishonesty. If you could increase your volume a little bit. Can you hear me now? That's better. Thank you. The central issue in this appeal is whether, under the law of New Jersey, a fidelity bond that provides coverage for loss resulting directly from the dishonest acts of any employee cover settlements for third parties arising from employee dishonesty. The New Jersey Supreme Court directly addressed this issue in 2004 in the case Auto Lenders v. Gentilini Court. There, the court surveyed the law from multiple jurisdictions and adopted the proximate cause test as the relevant framework to evaluate the term direct loss. Applying that test, it held that amounts an automobile dealership paid to settle claims with a third-party lender were compensable as direct losses. As a result, the district court's decision that the appellant's loss here was not covered because it constituted a third-party settlement is in direct conflict with the law of New Jersey. Even accepting the district court's premise that factual differences exist between the appellant's third-party settlement and the third-party settlement covered in Auto Lenders v. Gentilini Court, nothing in New Jersey law indicates that it would find these differences material. As a result, we asked this court to reverse the district court's holding that the appellant's losses were not entitled to coverage under Insuring Clause 1B. In addition, we urged the court to vacate and remand the issue of coverage under Insuring Clause 1D. Federal insurance did not move for summary judgment on this counterclaim and undisputed issues of material fact precluded the grant of summary judgment. Given the limited time this morning, I intend to... Didn't they move for dismissal of the entire case? They did, but the primary argument, or the only argument advanced, was the direct loss argument. Okay, but it's potentially significant. Excuse me. If the motion was for dismissal with prejudice of the entire case, the counterclaim was encompassed within the motion. It may not have been argued, but that's an important distinction. I would point out... And it seems to me if your client responded to the motion by arguing the counterclaim, this 1D issue, if that's what we're talking about, that shows that your client interpreted the motion as case-encompassing. The procedural posture, when federal insurance moved for summary judgment, the only mention of the counterclaim on Insuring Clause 1D was in a footnote that explained that there are arguments against that. But so what, count? So what? There was nothing precluded by that. The issue was brought out, argued by responsive brief and reply brief, and decided by the district court, right? Well, I think the main problem is that it wasn't argued because they didn't move on the basis that they raised it for the first time in their reply brief. That's my point. There's a difference between a motion and an argument. You can bring a case-encompassing motion and only argue what you think needs to be argued. And the other side comes in and says, wait a minute, they're asking you to dismiss something that they didn't support by argument. That doesn't mean the motion has to be denied. That's up to the district court. The district court chose to take it on as argued. There was no waiver or forfeiture here. I think you should move on. Sure, even assuming your Honor's point. My colleagues may not agree, but I think making this a procedural argument is just inconsistent with my litigation background. Certainly, Your Honor. Even assuming that it was properly raised, the problem is that material facts precluded the entry of summary judgment on that issue. The undisputed material facts include references to the criminal indictment against Christopher Servino, detailing a complex scheme by four people to defraud over 100 investors of nearly $15 million. The scheme included attempts by Mr. Servino to persuade investors, both soliciting funds from outside of court clearing that were held in different accounts, as well as advising those investors to liquidate investments at massive losses. These material factual issues are raised in the indictment that's attached at the exhibits and certainly precludes the entry of summary judgment on ensuring Clause 1D. Moving on to the issue of direct loss. As discussed, New Jersey expressly adopted the Proximate Cause Test as the relevant framework for determining whether a loss is compensable as a direct loss under the terms of the bond. Federal, in contrast, urges this court to abandon the Proximate Cause Test and adopt a different framework, determining coverage based solely on the title of the test. I don't think that's accurate at all. I think they distinguished Gentilini on the fact that there was direct loss there and that therefore the Proximate Cause Test obviously was satisfied. And then they got to attorney's fees and they carefully distinguished between fidelity coverage and liability coverage. So that's a way to argue that whether you call it Proximate Cause or not, however you address the direct loss issue, you still have to show it's a direct loss. And they argue this was indirect because other people caused the loss and they were liable for it. Turning to that particular argument, I think it's clearly distinguishable that auto lenders versus Gentilini Ford allowed compensation for the settlements that the dealership paid to the third-party lender. Given that the Proximate Cause Test is in play, which requires the court to ask whether an insurer... Counsel, my understanding is that they did not compensate for the amount of the settlement. They held there was coverage here and remanded for determination of what part of the settlement payment was covered as a direct loss, right? I believe the facts of the case show that there was compensation for the settlement and the court expressly says that any loss flowing to Gentilini Ford was compensable. Wait a minute, didn't they remand for determination of the loss? The only question on remand was whether Gentilini Ford might mitigate some of the settlement payments through its own collection efforts. Sure. But the settlement payments were the measure. The mitigation. Is there a site to Gentilini on remand that would demonstrate that the entire settlement amounts were covered? I do not have a site on remand, but I think it's important that the New Jersey Supreme Court could have turned its liability determination on how that settlement was structured, and it didn't. It found liability, it found coverage, regardless of what the mitigation was that came from the other payments. So the court was comfortable facing its coverage determination on the amount of the settlement in question, and in fact unequivocally said that any losses flowing to Gentilini Ford from the employee dishonesty were covered. I would point out that those facts are strikingly similar to the facts here because the loss here, or the loss in Gentilini Ford, occurred when the dealership fraudulently induced the third-party lender to invest in unsound loans, and then the harms flowed when the third-party lender realized it had been duped. The losses in this case flow from the appellant's employee, Christopher Servino, inducing investors to invest their own money in worthless shares of stock, and the investors' losses then flowed from their ability to sue the appellant for its losses flowing from that unsound investment. So I think for this court to hold that New Jersey doesn't cover third-party settlements would be in conflict with the facts of that case. In addition, even if there's a distinction to be drawn there, other cases, and in particular, retail ventures, the Sixth Circuit case, hold that third-party losses may be covered, and importantly, the Sixth Circuit relied on the New Jersey Supreme Court's holding to get to that conclusion. I see I'm out of time. We will rest on our briefs and urge the court to reverse and remand. Thank you. Mr. Schmuchler? Good afternoon, Your Honors. May it please the court, Scott Schmuchler on behalf of Federal Insurance Company. Axos's argument ignores the fundamental distinction between liability insurance and financial institution bonds. A liability insurance policy covers an insured against its exposure to a third party for a loss sustained by a third party. A financial institution bond covers an insured for a direct embezzlement of the insurance property, and therein lies the fundamental core holding in Gentilini. The court did not find a liability covered under the policy. The court explicitly and with certainty explained, and I quote, Gentilini sustained a direct loss as a result of Carpenter's conduct when it was induced by his fraudulent acts to hand over automobiles. It then says, and I quote, that Carpenter, quote, Judge Loken, to answer your question, there was no remand on damages. In fact, the trial court very clearly articulated what the damages were, and I point the court to page 253 of the decision. On page 253 of the decision, the Supreme Court notes exactly how damages were calculated. They were not calculated based on the settlement. In fact, the court awarded $5,000 per vehicle and therefore determined that there were 27 different occurrences because on 27 different times, the dealership parted with its car. And so the damage award against the carrier in that case was based explicitly on the number of cars that were parted with and awarded a per-occurrence award on a car-by-car basis. The reason the court did that is because of the very nature of coverage in Gentilini. If your honors look in the decision itself, on page 261, on page 261, the court is very clear that the policy only covers the cars, and the court says, a plain reading of the policy reveals that Gentilini's business personal property includes automobiles in its possession when they are held for sale. Therein lies why the district court granted summary judgment on this issue, that case in Gentilini involved a direct taking of insured property, not a liability. The court was very clear in the latter parts of its decision when it addressed attorney's fees that this is not liability coverage. The insured in Gentilini sought coverage or sought recovery of attorney's fees under a statute in New Jersey. The statute, however, doesn't apply to a first-party coverage. It only applies to a liability coverage. The reason the court did not award attorney's fees is because it's not liability coverage. This notion that a financial institution bond provides liability coverage is not the subject of substantial debate. It's been addressed by the First Circuit, the Fifth Circuit, the Sixth Circuit, and the Ninth Circuit, all of which agree uniformly that when you're dealing with a liability, the financial institution bond doesn't apply. That is picked up under a different coverage. CORE had that coverage in this case. They bought a liability policy from Excel and received payment under that policy. What the record reveals is that Excel funded an escrow account and that CORE slash AXOS used that escrow account to fund all of these settlements. The simple math of it is that they had $2,080,000 worth of settlements and they received $2 million from Excel. The simple math reveals that the $80,000 remaining, what's the subject of this debate, is all within the deductible, and that would provide the narrowest grounds for affirmance. Counsel spends a lot of time talking about proximate causation, and I'd like to point this court to its own decision, a decision Judge Loken, you authored in the Bank Insurer v. Highland Bank case, and I don't know that I've cited it in my brief because it came up in preparation for today, so I'd like to provide you the cite. It's 779F3-565. Now, that case involved the very same language we're dealing with here, a financial institution bond resulting directly standard, and like the insured does in this case, the insured in the Bank Insurer case said, proximate causation, automatic question of fact, you have to remand for summary judgment. This court affirmed summary judgment for the insurer in that case, specifically finding that even though it applied a proximate causation test, the mere fact that you apply a proximate causation test doesn't automatically mean there's coverage for everything related to fraud. In this case, there was no taking from core. These third parties invested. They suffered a loss when the market went down. They pursued arbitration and ultimately settled. There is a specific case that addresses this fact scenario. It's called Aetna versus Kidder Peabody. It's a New York Appellate Division case. It involves this very scenario where investors have losses. The court applied a proximate cause test, much like the insured wants in this case, and the court said liabilities are not covered. New Jersey law is simply not an outlier on this point. The financial institution bond does not cover liabilities. Now, as to insuring clause 1D, I just will make my comments brief because I think the district court got it squarely right. We move for summary judgment on the entirety of the case. Core well understood that insuring clause D was part of the case and raised whatever arguments it was able to raise, but it adduced no evidence. An indictment is not evidence. It adduced no evidence of the very unique coverages that are in place in insuring clause 1D, which requires very specific types of fraud. The fact that somebody is indicted for fraud doesn't mean we cover everything. Insuring clause 1D covers a very specific risk. Core adduced absolutely no evidence, and the fact that it adduced an indictment alleging fraud isn't good enough. Fundamentally, Your Honor, the district court got this one right. Financial institution bonds are not liability coverage. Gentilini doesn't create a split of authority on this issue. The only other point I'd like to make is on the retail ventures case. I will note that it is also not a third-party loss case. That case involved a cyber breach and coverage for costs and incurred paid after a cyber breach. Again, costs paid to a vendor, direct loss. This is not direct. Core did not suffer any loss as a direct result of Cervino's conduct. Third parties invested. Third parties pursued claims. Third parties settled. That's what liability policy covered. That's why XL paid, and that's why the district court correctly ruled in our favor. Unless the court has any questions, I'll be happy to waive the remainder of my time. Thank you. Thank you. Let's see. I'll give you a couple of minutes, Ms. Block. I took some of your time off. Oh, I see you've got it anyway, according to my timer. I wasn't aware that I had time, but I'll never bring down an opportunity to talk a little more. I do have one question relating to the 1D coverage and the evidence. I saw the cross-reference to the indictment in the complaint. I didn't see the evidence in the record where those direct solicitations were being made of customers or where there were inducements being made. Now, I might have missed it because, you know, I haven't combed through the record yet, and I'm just curious, where is it in the record? The criminal indictment was attached as an exhibit to the summary judgment briefing. I believe it's—shoot, I'm going to say it wrong. Yeah, I saw the criminal indictment, but I'm wondering, is there evidence that supports those allegations in the indictment, right? Because the indictment itself is not the evidence, and so there has to be evidence in the record. There's evidence of the convictions, and then evidence of the indict— and the convictions serves as evidence of the charges on which Mr. Servino was convicted. But the factual basis for that conviction might very well be the evidence. I'm just looking at is there, you know—beyond the factual basis, is there anything else? I mean, were there any statements by people who were solicited, who were, you know, in this summary judgment record? Sure. The other two things I would direct your honor to are the Alexson statement of claim and the Cherry statement of claim. Both of those were the arbitration claims by the appellants' investors, sort of detailing sort of the blow-by-blow on how they were defrauded. Sorry about that. No worries. I'm happy to clarify. It would appear I'm out of time again. Very good. Thank you, counsel. Thank you, your honor. It's been thoroughly brief, and the argument has been helpful, and we will take it under advisement.